1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAYSHAWN LEE JACKSON,                      No.  2:23-cv-01001-DJC-EFB (HC)

12                  Petitioner,

13          v.                                  FINDINGS AND RECOMMENDATIONS

14   JIM ROBERTSON,

15                  Respondent.

16

17          Petitioner is a state prisoner without counsel seeking a writ of habeas corpus pursuant to

18   28 U.S.C. § 2254.  ECF No. 1.  He challenges his convictions in the Sacramento County Superior

19   Court for second degree murder (count one), discharge of a firearm from a motor vehicle (count

20   two), and unlawful possession of a firearm (count three).  *Id.*  The jury also found true the

21   allegations as to counts one and two that petitioner personally and intentionally discharged a

22   firearm causing great bodily injury or death, and as to count one, that petitioner personally used a

23   firearm, and personally intentionally discharged a firearm.  Petitioner asserts seven grounds for

24   relief.[1]  *Id.*  For the reasons that follow, the petition must be denied.

25   /////

26   /////

27   _____

28   [1] The petition refers to an eighth ground for relief, but that section is blank.  ECF No. 1 at 17-19.

**I.    Background**

The facts, as relayed by the California Court of Appeal[2], are:

On the evening of August 26, 2017, defendant attended a party hosted by Larry Ragsdale, Sr., at his house; defendant did not know Ragsdale. Other members of defendant's family attended the party as well, including his niece, Nakaila Maricas, his sister, and his cousin, but defendant did not travel to the party with his relatives. Maricas had just turned 18 years old.

Defendant saw Maricas at the party with a beer in her hand. He was upset that she was there; he took the beer from her and told her to leave. She tried to walk away, but defendant followed her. Defendant's sister told him that she did not have a problem with Maricas being at the party and that Maricas was there with her.

Ragsdale witnessed defendant using foul language and telling Maricas to leave the party. Ragsdale's son, Romayne Ragsdale, also witnessed the argument.[3] Ragsdale told defendant and Maricas they had to leave, and he then asked Romayne to tell them to leave, which he did. Defendant said he did not want Maricas at the party, and Romayne said that was fine, they could both leave. Romayne walked with defendant away from the party. Defendant and Romayne shook hands, and then defendant left on foot. There were approximately 15 to 20 people in the front yard.

 About five to 10 minutes after defendant left the party and about 20 minutes after the argument, at approximately 12:01 a.m. on August 27, defendant drove down the street where the party was taking place, passed by the house, turned around, and then drove past the house again. Surveillance camera evidence from the neighborhood detailed the route taken by a car closely resembling the distinctive white Chevy Impala that defendant had been driving – his girlfriend's car.

Defendant parked and turned the car's headlights off, and then pulled away. At approximately 12:11 a.m., he drove toward the house with the car's headlight still off, slowed down, fired two or three shots, and drove off. Maricas was still at the party when the shooting occurred, but was not injured. Larry Ragsdale, Jr. – Ragsdale's son – was shot in the chest and later died; he had not interacted with defendant during the party.

A search of the area where the white car had been parked revealed a piece of broken beer bottle with defendant's palm print. A subsequent search of defendant's girlfriend's car revealed gunshot residue on the car's driver's seat and center console, which was consistent with a gun having been fired from inside the car through the open front passenger window. Cell phone records showed multiple calls in the area between defendant's phone and his sister and girlfriend on the date of the murder. The records also showed that on August 26 at 11:19 p.m., defendant's phone accessed a cell phone tower closest to the address of the shooting.

---

[2] The facts recited by the state appellate court are presumed to be correct where, as here, the petitioner has not rebutted the facts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (as amended).

[3] [Opinion Footnote 3] Because Larry Ragsdale, Sr., and Romayne Ragsdale share a last name, we refer to Romayne by his first name.

Defendant drove to Arizona in his own car the day after the murder; in Arizona he was pulled over for speeding and arrested for possession of marijuana. He later told his former employer that he had gone to Arizona because something happened in Sacramento, he was nervous about the police and needed to get out of town, his cousin had supposedly gone to a party and shot someone while possessing his license – which is why the police thought he might have committed the crime – and he was not in California at the time the shooting occurred.

### Verdict and Sentence

The jury found defendant guilty of second degree murder (§ 187, subd. (a); count one), discharging a firearm from a motor vehicle (§ 26100, subd. (c); count two), and unlawfully possessing a firearm (§ 29800, subd. (a)(1); count three). The jury also found true the allegations as to counts one and two that defendant personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)), and as to count one that defendant personally used a firearm (§ 12022.5, subd. (a); 12022.53, subd. (b)) and personally and intentionally discharged a firearm (§ 12022.53, subd. (c)). In bifurcated proceedings, the trial court found true that defendant had a prior strike conviction. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(f).)

The trial court sentenced defendant to an aggregate sentence of 55 years to life in prison. The court sentenced defendant as follows: on count one to 15 years to life, doubled to 30 years to life due to his prior strike, plus 25 years to life for the personal use and discharge of a firearm enhancement (§ 12022.53, subd. (d)); on count two to the upper term of seven years, doubled to 14 years, plus 25 years to life pursuant to section 12022.53, subdivision (d), stayed pursuant to section 654; and on count three to three years, doubled to six years, to run concurrent to the sentence for count one. The court stayed the remaining section 12022.53, subdivisions (b) and (c) enhancements, as well as the section 12022.5 subdivision (a) enhancement, pursuant to section 654.

Defendant timely appealed.

*People v. Jackson,* No. C091570, 2021 WL 5475591, *1-3 (Cal. Ct. App. Nov. 23, 2021), ECF No. 13-20 at pp. 2-5, *review denied* (Feb. 8, 2022); ECF No. 13-22; *see also* ECF No. 15-1.

Petitioner's appeal of his convictions was rejected by the state appellate court. ECF No. 13-20. The California Supreme Court denied review. ECF No. 13-22. Petitioner's state petition for writ of habeas corpus was also denied. ECF No. 13-24.

## II.    Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

1    Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

2    corpus relief:

3        An application for a writ of habeas corpus on behalf of a person in custody
         pursuant to the judgment of a State court shall not be granted with respect to any
4        claim that was adjudicated on the merits in State court proceedings unless the
         adjudication of the claim –
5
6        (1) resulted in a decision that was contrary to, or involved an unreasonable
             application of, clearly established Federal law, as determined by the Supreme
             Court of the United States; or
7
8        (2) resulted in a decision that was based on an unreasonable determination of the
             facts in light of the evidence presented in the State court proceeding.

9    Under § 2254(d)(1), "clearly established federal law" consists of holdings of the United

10   States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*,

11   705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S.34 (2011); *Stanley v.*

12   *Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06

13   (2000)). Circuit court precedent "may be persuasive in determining what law is clearly

14   established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859

15   (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not

16   be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific

17   legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64

18   (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 47-49 (2012) (per curiam)). Nor may it be used

19   to "determine whether a particular rule of law is so widely accepted among the Federal Circuits

20   that it would, if presented to th[e] [Supreme] Court, be accepted as correct." *Id*. Further, where

21   courts of appeals have diverged in their treatment of an issue, there is no "clearly established

22   Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

23   A state court decision is "contrary to" clearly established federal law under § 2254(d)(1) if

24   it applies a rule contradicting a holding of the Supreme Court or reaches a result different from

25   Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634,

26   640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court

27   may grant the writ if the state court identifies the correct governing legal principle from the

28   Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

4

case.[4] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

In evaluating whether the petition satisfies § 2254(d), a federal court looks to the last reasoned state court decision. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates

---

[4] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

1  the reasoning from a previous state court decision, the court may consider both decisions to

2  ascertain the reasoning of the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir.

3  2007) (en banc).  "When a federal claim has been presented to a state court and the state court has

4  denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

5  absence of any indication or state-law procedural principles to the contrary."  *Richter*, 562 U.S. at

6  99.  This presumption may be overcome by a showing "there is reason to think some other

7  explanation for the state court's decision is more likely."  *Id*. at 99-100 (citing *Ylst v.*

8  *Nunnemaker*, 501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on a petitioner's

9  claims rejects some claims but does not expressly address a federal claim, a federal habeas court

10  must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  *Johnson*

11  *v. Williams*, 568 U.S. 289, 293 (2013).

12        Where the state court reaches a decision on the merits but provides no reasoning to

13  support its conclusion, a federal habeas court independently reviews the record to determine

14  whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

15  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

16  review of the constitutional issue, but rather, the only method by which we can determine whether

17  a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no

18  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

19  reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 99-100.

20        When it is clear, however, that a state court has not reached the merits of a petitioner's

21  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

22  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

23  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

24      **III.**    **Analysis**

25        Petitioner states seven grounds for relief in his petition.  ECF No. 1.  The court will

26  consider each of them in turn.

27  ////

28  ////

## A. Prosecutorial Misconduct

Petitioner claims that the prosecutor misstated the government's burden of proof in closing argument, amounting to prejudicial misconduct. The state appellate court addressed this claim as follows:

> Defendant first contends the prosecutor committed prejudicial misconduct by misstating the burden of proof in closing argument. Because his trial counsel failed to object to the prosecutor's argument, defendant alternatively contends that counsel rendered constitutionally ineffective assistance. We conclude that the prosecutor did not misstate the law, and therefore counsel's failure to object was not constitutionally deficient.
>
> A. *Procedural History*
>
> The jury was instructed with CALCRIM No. 224, which states: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable." The jury was also instructed with CALCRIM Nos. 103 and 22, which each stated that defendant was presumed innocent and outlined the prosecution's burden of proof.
>
> The prosecution recognized in closing argument that defendant was entitled to a not guilty verdict unless his guilt was proved beyond a reasonable doubt. She explained that proof beyond a reasonable doubt "leaves us with an abiding conviction that the charge is true, abiding conviction means a conviction that lasts."
>
> Defense counsel focused his closing argument on his theme that the victim's family and the investigating law enforcement officers all jumped to the conclusion that defendant committed the crime in the absence of direct evidence of his guilt. Counsel discussed CALCRIM No. 224, noting that, if there are two or more reasonable conclusions that may be drawn from circumstantial evidence, and one of those reasonable conclusions points to innocence, the jury must accept the conclusion pointing to innocence. He explained to the jury that he read CALCRIM No. 224 and the reasonable doubt instruction in tandem because every piece of circumstantial evidence must be proven beyond a reasonable doubt. Counsel argued that the circumstantial evidence here was subject to two reasonable interpretations, one of which pointed to innocence.
>
> In her rebuttal argument, the prosecutor reiterated: "Now, let me be clear. The burden is always, always on the People to prove the case beyond a reasonable doubt. That never changes, not from day one, not to the end of trial." Later, she discussed CALCRIM No. 224, telling the jury that: "[E]ssentially what it tells you is that when it comes to circumstantial evidence, you need to confirm that you you

[*sic*] believe and accept all those pieces and that they do in fact point to guilt using a reasonable standard, and if there is a reasonable explanation of the evidence that points to innocence, you have to accept that one. [¶] But the law is clear that is based on evidence. It always comes back to the evidence and a reasonable interpretation of that evidence as a whole, not broken up piece by piece, explained away piece by piece, but as a whole . . . ."

After addressing various pieces of evidence, the prosecutor addressed defense counsel's argument that everyone in investigating the case jumped to the conclusion that defendant was the shooter: "[L]et's walk through it under the lens of the jumping to conclusions and . . . take it piece by piece and see if it really is reasonable, because the conclusion, the reasonable conclusion for all of these things that I've just laid out to you, the reasonable conclusion of all that evidence taken together is that he is the shooter."

The prosecutor then "work[ed] it back the other way" and offered a version of the facts assuming that defendant was not the shooter to show that the murder and defendant's subsequent conduct only made sense if defendant was the shooter; in other words, the defendant's version of the events was not reasonable. The prosecutor concluded with another mention of CALCRIM No. 224: "The instruction that [defense counsel] talked to about, the reasonable – circumstantial instruction. . . . [¶] [W]hen it comes to circumstantial evidence, if there are two reasonable interpretations of the evidence – right, evidence – not just reasonable interpretations of what is possible or what is imaginary. But if there are two reasonable interpretations of the evidence when taken altogether, then you must – and one of those. Back up – and one of those reasonable interpretations of the evidence points to innocence, you must, you must accept the interpretation, reasonable interpretation of the evidence that points to innocence because that's how our system works. [¶] In a case of a reasonable doubt based on the evidence, tie goes to the defendant every time. That's how it works. [¶] But that instruction goes on to say that if instead you believe that one interpretation of the evidence is reasonable and the other interpretation of the evidence is unreasonable, then you must, you must reject the unreasonable and accept the reasonable because that's how our system works, too. That's how it works, too. [¶] The only reasonable interpretation for all the evidence taken together is that he is guilty. He is guilty, Ladies and Gentlemen, and that is the verdict I'm asking you to return to each count."

Defense counsel did not object to any of these statements or request that the jury be admonished to disregard them. Thus, the trial court did not comment on them.

B.  *Legal Background*

"Advocates are given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.] However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' [Citations.] To establish such error, bad faith on the prosecutor's part is not required. [Citation.] '[T]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error.'" (*People v. Centeno* (2014) 60 Cal. 4th 659, 666-667 (*Centeno*).)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there

8

was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statement.'" (*Centeno, supra,* 60 Cal. 4th at 667.)

In *Centeno*, the prosecutor told the jury that in reaching its decision it must reject impossible and unreasonable inference, and only consider reasonable possibilities. She compared the prosecution evidence and defense evidence directly, arguing that the defense theory was unreasonable, and the prosecution theory was reasonable. (*Centeno, supra,* 60 Cal. 4th at p. 666.) The prosecutor asked whether it was reasonable that the child sex abuse victim had invented her story or that the defendant had abused the victim, and she asserted, "'[t]hat is what is reasonable, that he abused her.'" (*Ibid.*) Then the prosecutor argued that it was not reasonable to believe that the victim was lying, it was not reasonable that there was an innocent explanation for the defendant's conduct, and it was not reasonable to believe that the defendant was being set-up. (*Ibid.*) The prosecutor asked whether it was reasonable that "'he['s] good for it,'" concluding, "'[t]hat is what is reasonable. He's good for it.'" (*Ibid.*)

The *Centeno* court recognized that a prosecutor is permitted to "argue that the jury may reject impossible or unreasonable interpretations of the evidence and to so characterize a defense theory," "urge that a jury may be convinced beyond a reasonable doubt even in the fact of conflicting, incomplete, or partially inaccurate accounts," and "urge that the jury consider all the evidence before it." (*Centeno, supra,* 60 Cal. 4th at p. 672.) The court noted that after the jury sets aside the incredible and unreasonable, it must evaluate the remaining evidence and decide what the evidence establishes and how much confidence it has in that determination. (*Ibid.*) It continued: "The standard of proof is a measure of the jury's level of confidence. It is not sufficient that the jury simply believe that a conclusion is reasonable. It must be convinced that all necessary facts have been proven beyond a reasonable doubt. [Citation.] The prosecutor, however, left the jury with the impression that so long as her interpretation of the evidence was reasonable, the People had met their burden. The failure of the prosecutor's reasoning is manifest." (*Ibid*).

The court in *Centeno* observed that a prosecutor's argument that the jury must accept the reasonable and reject the unreasonable does not lessen the prosecution's burden of proof. (*Centeno, supra*, 60 Cal. 4th at p. 672, citing *People v. Romero* (2008) 44 Cal 4th 386 (*Romero*).) But the prosecutor may not suggest that a "'reasonable'" account of the evidence satisfies that burden. (*Centeno* at p. 672, citing *State v. Sappington* (Kan. 2007) 169 P. 3d 1107, 1113 [addressing prosecutor's argument, "Remember our test is beyond a reasonable doubt. *And is it reasonable given that evidence that we have that [the defendant] is the one that did this? And I suggest to you the answer is, yes, it is*"] & p. 1115.) The court concluded that the prosecutor's argument did more than simply urge the jury to ""'accept the reasonable and reject the unreasonable'" in evaluating the evidence before it, . . . she confounded the concept of rejecting unreasonable inferences, with the standard of proof beyond a reasonable doubt. She repeatedly suggested that the jury could find defendant guilty based on a 'reasonable' account of the evidence. These remarks clearly diluted the People's burden." (*Centeno*, at p. 673.)

In *People v. Ellison* (2011) 196 Cal. App. 4th 1342, the prosecutor made several arguments to the effect that "you have to look at whether it's reasonable or

9

unreasonable for the defendant to be innocent" and "you've got to look at what's reasonable, when you look at all the evidence," and to vote not guilty where there is a reasonable interpretation of the evidence that points to innocence because "that means it's reasonable that the defendant is innocent. . . ." (*Id.* at p. 1351.) The appellate court concluded that "the prosecutor improperly attempted to lessen the People's burden of proof by arguing to the jury that the beyond-reasonable-doubt standard required the jury to determine whether defendant's innocence was reasonable." (*Id.* at p. 1353.) However, the court determined that reversal was not required because the jury was properly instructed on the principles of law related to the presumption of innocence and the requirement of proof beyond a reasonable doubt, the prosecutor reminded the jury that "'[t]he law comes from the Judge,'" the court gave curative instructions following the defendant's objections to the prosecutor's arguments, and the jury acquitted defendant of the most serious charges. (*Ibid.*)

C. *Forfeiture and Ineffective Assistance of Counsel*

Generally, "[a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and . . . requested that the jury be admonished to disregard the impropriety." (*People v. Thornton* (2007) 41 Cal. 4th 391, 454.) "A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue . . . that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel." (*People v. Lopez* (2008) 42 Cal. 4th 960, 966.)

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694; *People v. Ledesma* (1987) 43 Cal. 3d 171, 216-218.) To show prejudice, defendant must show a reasonable probability that he would have received a more favorable result had counsel's performance not been deficient. (*Strickland*, at pp. 693-694; *Ledesma*, at pp. 217-218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694; accord, *Ledesma*, at p. 218.)

D. *Analysis*

We conclude the prosecutor's argument in this case did not suffer from the defect the court recognized in *Centeno*. At the outset, the trial court properly instructed the jury: "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." The prosecutor correctly recognized in closing that defendant was entitled to a not guilty verdict unless the prosecution proved his guilt beyond a reasonable doubt, which she defined as leaving the jury "with an abiding conviction that the charge is true, an abiding conviction meaning a conviction that lasts." The prosecutor began her final closing argument by reiterating that "[t]he burden is always, always on the People to prove the case beyond a reasonable doubt. That never changes, not from day one, not to the end of trial."

Turning to CALCRIM No. 224, which defense counsel had discussed in his closing argument, the prosecutor correctly explained that, in the event there were a reasonable explanation of circumstantial evidence pointing to innocence, the jury would be required to accept that explanation. The prosecutor then offered a

version of the facts assuming that defendant was not the shooter to demonstrate to the jury that defendant's version of the facts was not reasonable. She then concluded by arguing that there was only one reasonable interpretation of all the circumstantial evidence taken together – that defendant was guilty. In other words, the prosecutor argued that this case did *not* involve two reasonable explanations of the circumstantial evidence, one of which pointed to innocence. Rather, she argued that there was only *one reasonable interpretation* of that evidence, and it pointed to guilt. At no point did the prosecutor state that any reasonable account of the evidence satisfied the People's burden of proof beyond a reasonable doubt. The prosecutor did not misstate the law; the argument was permissible. Accordingly, defense counsel was not constitutionally ineffective for failing to object thereto.

ECF No. 13-20 at pp. 5-12.

A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. *Darden v. Wainwright,* 477 U.S. 168, 181 (1986). However, such misconduct does not, per se, violate a petitioner's constitutional rights. *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993) (citations omitted). Claims of prosecutorial misconduct are reviewed "on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Johnson v. Sublett,* 63 F.3d 926, 929 (9th Cir. 1995) (citation and internal quotation marks omitted); *see also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Turner v. Calderon*, 281 F.3d 851 868 (9th Cir. 2002). Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. *Johnson*, 63 F.3d at 930 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Put another way, prosecutorial misconduct violates due process only when it has a substantial and injurious effect or influence in determining the jury's verdict. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

"Improper argument does not, per se, violate a defendant's constitutional rights." *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993). In considering claims of prosecutorial misconduct involving allegations of improper argument, the court must examine the likely effect of the statements in the context in which they were made and determine whether the comments so infected the trial with unfairness as to render the resulting conviction a denial of due process. *Darden*, 477 U.S. at 181-83; *Donnelly*, 416 U.S. at 643; *Turner v. Calderon*, 281 2d 851, 868 (9th

11

1   Cir. 2002).  "[I]t 'is not enough that the prosecutor's remarks were undesirable or even

2   universally condemned.'"  *Darden*, 477 U.S. at 181 (citation omitted).  The issue is whether the

3   "remarks, in the context of the entire trial, were sufficiently prejudicial to violate [petitioner's]

4   due process rights."  *Donnelly*, 416 U.S. at 639; *United States v. Robinson*, 485 U.S. 25, 33

5   (1988) ("[P]rosecutorial comment must be examined in context. . . .").  Finally, it is the

6   petitioner's burden to state facts that point to a real possibility of constitutional error in this

7   regard.  *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

8        The court has reviewed the record and concludes that the prosecutor in this case did not

9   commit prosecutorial misconduct in closing argument.  The prosecutor's challenged remarks

10  were, in large part, a rebuttal response to the defendant's argument that if there were two

11  reasonable interpretations, the jury must accept the one that points to innocence.   ECF No. 13-20

12  at p. 6.  This is permissible.  *See, e.g., People v. Young*, 470 U.S. 1, 12-123 (1985) ("if the

13  prosecutor's remarks were 'invited' and did no more than respond in order to 'right the scale,'

14  such comments would not warrant reversing a conviction").  The prosecutor did not argue that if

15  two interpretations of the evidence were reasonable, the jury should not choose the one pointing

16  to innocence; rather, she specifically argued that defendant's version of events was unreasonable

17  and that, consistent with the applicable jury instructions, the jury should "reject the unreasonable

18  and accept the reasonable."  *Id.* at p. 7.  Petitioner cannot demonstrate that this argument was

19  improper at all, let alone that, after examining the proceedings as a whole, it rendered his trial

20  fundamentally unfair.  *See Darden*, 477 U.S. at 181.

21       Most critically, as the state court reasonably found, the prosecutor never attempted to shift

22  the burden of proof or imply that petitioner had a duty to present any evidence.  On the contrary,

23  she reaffirmed that the state "always, always [has the burden] to prove the case beyond a

24  reasonable doubt."  ECF No. 13-20 at p. 6.  Thus, petitioner has failed to demonstrate that the

25  decision of the state court concluding that the closing argument was permissible was contrary to

26  or an unreasonable application of, clearly established Supreme Court precedent, or that it was

27  based on an unreasonable determination of the facts of this case.  Furthermore, given that there

28  was no improper argument, petitioner also cannot demonstrate that it was ineffective assistance of

12

1    his counsel to fail to object to the argument.  *See Strickland*, 466 U.S. at 687-88 (in order to prove

2    ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an

3    objective standard of reasonableness and that he was prejudiced by counsel's deficient

4    performance).  This claim must be denied.

5                              **B.  Instructional Error**

6            Petitioner contends that the trial court committed prejudicial error when it refused to

7    instruct the jury on heat of passion voluntary manslaughter.  The appellate court addressed this

8    claim as follows:

9           Defendant contends the trial court prejudicially erred by refusing to instruct the
10          jury on heat of passion voluntary manslaughter; he argues a rational juror could
            have found that defendant was acting in a heat of passion arising from his
11          argument with his niece.  We disagree.

12          A.  *Procedural Background*

13          In the conference on jury instructions, defendant requested that the court instruct
            the jury on heat of passion voluntary manslaughter as a lesser included crime of
14          second degree murder.  Defendant recognized that there was no self-defense
            argument to be made, and he acknowledged that his case was "an all-or-nothing
15          case" – referring to his theory that he was not the shooter – but he requested the
            instruction "as kind of a prophylactic argument."

16          The trial court refused defendant's request.  First, it observed that the victim must
            be the person to incite the passion, which did not happen in this case.  Second, it
17          noted that instructing on heat of passion voluntary manslaughter required evidence
            that defendant acted rashly and under the influence of that heat of passion, and
18          there was no evidence as to defendant's state of mind at the time of the shooting.

19          B.  *Legal Background*

20          "[A] trial court is obligated to instruct the jury on all general principles of law
            relevant to the issue raised by the evidence.  [Citation.]  It is error for a trial court
21          not to instruct on a lesser included offense when the evidence raises a question
            whether all of the elements of the charged offense were present, and the question is
22          substantial enough to merit consideration by the jury."  (*People v. Booker* (2011)
            51 Cal. 4th 141, 181.)  However, "'[a]n instruction on a lesser included offense
23          must be given only if there is substantial evidence from which a jury could
            reasonably conclude that the defendant committed the lesser, uncharged offense,
24          but not the greater, charged offence.'"  (*People v. Nelson* (2016) 1 Cal. 5th 513,
            535 (*Nelson*).)  "Substantial evidence is evidence from which a jury could
25          conclude beyond a reasonable doubt that the lesser offense was committed."
            (*People v. Simon* (2016) 1 Cal. 5th 98, 132; see *People v. Benavides* (2005) 35
26          Cal. 4th 69, 102 [evidence is substantial if a reasonable jury could find it
            persuasive].)  "The 'substantial evidence requirement is not satisfied by "'any
27          evidence . . . no matter how weak'"'" (*Nelson*, at p. 538), and "[s]peculative,
            minimal, or insubstantial evidence is insufficient to require an instruction on a
28          lesser included offense."  (*Simon*, at p. 132).  We independently review whether

                                              13

the trial court improperly failed to instruct on a lesser included offense. (*People v. Souza* (2012) 54 Cal 4th 90, 113.) We review the evidentiary support for a lesser included offense in the light most favorable to the defendant. (*People v. Wright* (2015) 242 Cal. App. 4th 1461, 1483.)

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) "Manslaughter is a lesser included offense of murder, and a defendant who commits an intentional and unlawful killing but who lacks malice is guilty of voluntary manslaughter. Heat of passion is one of the mental states that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter." (*Nelson, supra,* 1 Cal. 5th at p. 358.)

Our Supreme Court has explained: "A heat of passion theory of manslaughter has both an objective and a subjective component. [Citations.] [¶] " (*People v. Moye* (2009) 47 Cal. 4th 537, 549 (*Moye*).) ""The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation], or by conduct reasonably believed by the defendant to have been engaged in by the victim. [Citations.] The provocative conduct by the victim may be physical or verbal, but the conduct must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection.'" (*Id.* at pp. 549-550. "[T]he 'proper standard focuses upon whether the person of average disposition would be induced to react from passion and not from judgment.'" (*Nelson, supra* 1 Cal. 5th at p. 539 [" 'provocation is sufficient not because it affects the quality of one's thought processes, but because it eclipses reflection.' "].) """[N]o specific type of provocation [is] required,""" and "the passion aroused need not be anger or rage, but can be any """[v]iolent, intense, high-wrought or enthusiastic emotion""" [citation] other than revenge." (*People v. Breverman* (1988) 19 Cal. 4th 142, 163.) "'The provocation must be such that an average, sober person would be so inflamed that he or she would lose reason and judgment. Adequate provocation and heat of passion must be affirmatively demonstrated.'" (*People v. Gutierrez* (2009) 45 Cal. 4th 789. 826.)

As for the subjective element of voluntary manslaughter based on provocation, our Supreme Court has explained that the defendant "must be shown to have killed while under 'the actual influence of a strong passion' induced by [adequate] provocation." (*Moye, supra*, 47 Cal. 4th at p. 500.) Our high court has emphasized that "it is not sufficient that a person 'is provoked and [then] *later* kills.'" (*Nelson, supra,* 1 Cal. 5th at p. 539.) Rather, the killing must occur "'suddenly as a response to the provocation, and not belatedly as revenge or punishment. Hence, the rule is that, if sufficient time has elapsed for the passions of an ordinarily reasonable person to cool, the killing is murder, not manslaughter.'" (*People v. Daniels* (1991) 52 Cal. 3d 815, 868.)

C.  *Analysis*

Based on the evidence that defendant became upset upon realizing that his niece was at the party, as we have described in detail *ante*, defendant contends that a rational jury could have determined that he acted rashly in a heat of passion arising from this argument over Maricas. He contends that whether he had cooled off by the time of the shooting or whether the argument were objectively provocative were factual issues for the jury. We disagree. A reasonable, average, sober person would not have been so inflamed by seeing his young adult niece at a party that he would act rashly or without due deliberation. Maricas was drinking alcohol at a party, but there was no evidence that she was engaged in any behavior that would

inflame a reasonable person to action some 30 minutes after the confrontation. There was no evidence that Maricas' safety was at risk. Simply put, there was no evidence of the requisite provocation.

Nor was there evidence that defendant and Romayne were in a heated argument, that Romayne threatened or taunted defendant, or that Romayne challenged him to a fight. In other words, there is no evidence that would permit a reasonable jury to find that Romayne's conduct was sufficient to cause a person of average disposition to become so inflamed as to lose reason and judgment. (See *People v. Manrquez* (2005) 37 Cal. 4th 547, 586 [calling the defendant "a 'mother fucker'" and taunting him by "repeatedly asserting that if defendant had a weapon, he should take it out and use it" "plainly were insufficient to cause an average person to become so inflamed as to lose reason or judgment"].) If anything, the record suggests that defendant acted out of a desire to forced Maricas to leave the party rather than rashly due to legally adequate provocation, which "cannot satisfy the objective requirement for provocation." (*People v. Gonzales and Soliz* (2011) 52 Cal. 4th 254, 301.)

Moreover, the evidence does not show that the shooting was the result of unconsidered reaction to provocation. To the contrary, as we have described in detail *ante*, the evidence shows that defendant left the party, got into a car, left the scene, drove past the party twice, parked and turned off his headlights, approached the party again, fired shots into the crowd in the yard, and then fled with his headlights turned off. We agree with the Attorney General that defendant "acted methodically, not rashly."

Even were we to assume the objective element of the offense was satisfied, the evidence was insufficient to satisfy the subjective element. Defendant contends that his state of mind may be inferred from the circumstances (*People v. Sanchez* (2016) 63 Cal. 4th 411, 457 [intent may be inferred from the circumstances]), and the evidence provided circumstantial evidence that defendant acted in a heat of passion. But the fact that defendant committed a nonsensical crime is not sufficient evidence that he was under "'the actual influence of a strong passion' induced by [adequate] provocation." (*Moye, supra*, 47 Cal. 4th at p. 550.) Defendant's state of mind was never at issue or argued by the defense; the defense theory was that defendant was not the shooter. The subjective requirement clearly was not satisfied.

Because we find no instructional error, we do not address defendant's claim of prejudice.[5]

ECF No. 13-20 at pp. 12-16.

---

[5] [Opinion Footnote 4] Defendant petitioned for rehearing, claiming in part that we failed to address his contentions that the prosecutor's closing argument and the trial court's refusal to instruct as discussed *ante* violated certain of his federal constitutional rights. We observe at the outset that "[a]n appellate court is not required to address all of the parties' respective arguments, discuss every case or fact relied upon by the parties, distinguish an opinion just because a party claims it is apposite, or express every ground for rejecting every contention advanced by every party." (*People v. Garcia* (2002) 97 Cal. App. 4th 847, 853.) Indeed, "[t]he California Supreme Court has not been reluctant to give short shrift to deserving issues." (*Ibid.*) However, because defendant has petitioned for rehearing and requested that he specifically acknowledge these claims, we acknowledge and reject them for the reasons already set forth in parts I and II of our Discussion, *ante*. ECF No. 15-1 at p. 2.

1      Errors in instructing the jury can only support federal habeas relief if they "so infected the

2  entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62,

3  72 (1991).  Allegedly erroneous instruction "must be considered in the context of the instructions

4  as a whole and the trial record." *Id.* at 72.  Furthermore, a state court's reasoned interpretation

5  that a petitioner was not entitled to an instruction under state law binds this court.  *See Bradshaw*

6  *v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("A] state court's interpretation of state law,

7  including one announced on direct appeal of the challenged conviction, binds a federal court

8  sitting in habeas corpus.").  Lastly, a habeas petitioner is not entitled to relief unless the

9  instructional error had a "substantial and injurious effect or influence in determining the jury's

10  verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  That is the error must have resulted

11  in "actual prejudice." *Id.*

12      As an initial matter, respondent correctly states that there is no clearly established

13  Supreme Court precedent mandating jury instructions on lesser-included offenses in non-capital

14  cases. *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000).  In *Beck v. Alabama*, the Supreme

15  Court held that, in a capital case, a defendant's due process rights were violated "when the jury

16  was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when

17  the evidence would have supported such a verdict." 447 U.S. 625, 627 (1980).  Given that there

18  is no equivalent Supreme Court holding regarding non-capital cases such as the one at bar,

19  petitioner's claim must fail under section 2254(d)(1). *See, e.g. Knowles v. Mirzayance*, 556 U.S.

20  111, 122 (2009) (finding that it is "not 'an unreasonable application of clearly established Federal

21  law' for a state court to decline to apply a specific legal rule that has not been squarely

22  established by this Court").  In addition, to the extent petitioner is maintaining he is entitled to

23  relief due to a violation of state law regarding jury instructions, such a claim is not cognizable on

24  federal habeas. *See, e.g. Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

25      Furthermore, even if this were a capital case, petitioner would not be entitled to a lesser

26  included offense instruction unless there was evidence to support such an instruction. *Hopper v.*

27  *Evans*, 456 U.S. 605, 611 (1982) ("due process requires that a lesser included offense instruction

28  [in a capital case] be given *only* when the evidence warrants such an instruction.").  And here, as

16

1    the state court reasonably found, there was insufficient evidence to support a heat-of-passion

2    instruction, and thus there was no instructional error.  ECF No. 13-20 at pp. 15-16.   Indeed,

3    petitioner submitted no state-of-mind evidence during trial that would even tend to suggest that a

4    heat-of-passion instruction was warranted; the defense theory was that petitioner was not the

5    person who shot the gun.  *Id.*  The state court's determination that state law did not require the

6    trial court to instruct the jury on heat-of-passion manslaughter is binding on this court, *Bradshaw*,

7    546 U.S. at 76, and petitioner has failed to demonstrate that the decision of the state court was

8    contrary to or an unreasonable application of, clearly established Supreme Court precedent, or

9    that it was based on an unreasonable determination of the facts of this case.   Moreover, because

10   there was no instructional error, petitioner is unable to demonstrate prejudice.  *Brecht*, 507 U.S. at

11   637.  This claim must be denied.

12                         **C.  *Pitchess* Motion**

13            In his third claim, petitioner requests that the court independently review the record of the

14   trial court's *Pitchess* hearing to obtain discovery of an officer's personnel records.  *Pitchess v.*

15   *Superior Court*, 11 Cal. 3d 531 (1974).  The appellate court addressed petitioner's *Pitchess* claim

16   as follows:

> Defendant asks us to conduct an independent review of the records of the trial
> court's hearing on his *Pitchess* motion to obtain discovery of the relevant officer's
> personnel records.[6]  (See *People v. Mooc* (2001) 26 Cal. 4th 126, 1225-1226.)  We
> will not disturb a trial court's ruling on a *Pitchess* motion absent an abuse of
> discretion.  (*Alford v. Superior Court* (2003) 29 Cal. 4th 1033, 1039.)  Having
> independently reviewed the transcript of the *Pitchess* proceeding, we conclude the
> court followed proper *Pitchess* procedures and did not erroneously withhold any
> information.  (See *People v. Fuiava* (2012) 53 Cal. 4th 622, 646-648.)

21   ECF No. 13-20 at p. 17.

22            A *Pitchess* motion permits a defendant to seek disclosure of a police officer's personnel

23   records upon a showing of good cause.  Cal. Evid. Cod § 1043; *City of San Jose v. Superior*

24   *Court,* 5 Cal. 4th 47, 52 (1993).  If good cause is established, the trial court must examine the

25   records *in camera* to determine their relevancy to the case.  *Id.*  To the extent petitioner is

26   claiming that the trial court's decision on his *Pitchess* motion violated state law, that claim is not

27

28   _____

[6] [Opinion Footnote 5] We note that the record as provided to the court is not sealed.

1  cognizable on federal habeas review.  *Estelle*, 502 U.S. at 67.  Moreover, the federal constitution

2  does not create a general right to discovery in criminal cases.  *Weatherford v. Bursey*, 429 U.S.

3  549, 559 (1977).  And "[e]ven if a state prisoner can somehow allege a federally cognizable claim

4  – i.e., for suppression of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963) he

5  must establish that his inability to discover *Pitchess* materials had a substantial or injurious effect

6  on the jury's verdict.  *Penry v. Johnson*, 532 U.S. 782, 796 (2001)."  *Serrano-Aguilar v. Beard*,

7  2017 WL 3839950, *5 (E.D. Cal. Sept. 1, 2017).

8  Petitioner, however, does not allege that the *Pitchess* material at issue (which was, as the

9  state court noted, not under seal) was somehow exculpatory or impeaching.  Rather, he requests

10  that this court conduct an independent review of the material in order to determine whether the

11  trial court decision that nothing in the material was discoverable was in error.  ECF No. 1 at p. 43.

12  Here, both the trial court and the appellate court conducted an *in camera* review of the personnel

13  records and found they did not contain any material discovery under *Pitchess*.  Petitioner has not

14  made any allegations that these factual determinations were unreasonable; for example, he does

15  not even allege that that any exculpatory or impeaching materials existed and were withheld from

16  him.  As such, petitioner is unable to demonstrate that the state court's rejection of this claim was

17  contrary to or an unreasonable application of, clearly established Supreme Court precedent, or

18  that it was based on an unreasonable determination of the facts of this case.  *See, e.g. Lopez v.*

19  *Paramo*, 2018 WL 1399176, *4 (E.D. Cal., March 19, 2018) (denying habeas petitioner's

20  *Pitchess* claim under similar circumstances); *Soto v. Allison*, 2022 WL 18144196, at*8 (C.D. Cal.

21  Dec. 6, 2022) (denying claim where petitioner requested the federal court review the same

22  personnel records already reviewed by the trial and appellate courts).  This claim must be denied.

23  **D. Cumulative Error**

24  In his fourth claim, petitioner alleges that taken cumulatively, his first three claims

25  constitute prejudicial error.  This claim was addressed by the state court as follows:

26  Defendant petitioned for rehearing, claiming that we failed to address his
    contention of cumulative prejudice as to parts I-III of our Discussion.  Because we

27  rejected each of the arguments he asserted were cumulatively prejudicial, we also
    reject his argument for cumulative prejudice.  (*See People v. Sedillo* (2015) 235

28  Cal. App. 4th 1037, 1068 ["There can be no cumulative error if the challenged

18

1    rulings were not erroneous"].)

2    ECF No. 15-1 at p. 3.

3        "The Supreme Court has clearly established that the combined effect of multiple trial

4    errors violates due process where it renders the resulting trial fundamentally unfair." *Parle v.*

5    *Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298

6    (1973)). "Cumulative error applies where, although no single trial error examined in isolation is

7    sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still

8    prejudiced a defendant." *Jackson v. Brown,* 513 F.3d 1057, 1085 (9th Cir. 2008) (quoting

9    *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000)) (quotation marks omitted).

10        Here, the state court found that were was no error with respect to petitioner's claims of

11   prosecutorial misconduct, instructional error, and *Pitchess* error; accordingly, there was no

12   cumulative error. Petitioner is unable to demonstrate that the state court's rejection of this claim

13   was contrary to or an unreasonable application of, clearly established Supreme Court precedent,

14   or that it was based on an unreasonable determination of the facts of this case. *See, e.g. United*

15   *States v. Solorio*, 669 F.3d 943, 956 (9th Cir. 2012) ("There can be no cumulative error where a

16   defendant fails to identify more than one error.") This claim must be denied.

17                    **E. Sentencing Claim Regarding Previous Strikes**

18        In his fifth claim, petitioner maintains that the trial court abused its discretion when it

19   denied his motion to strike a prior strike conviction. ECF No. 1 at pp. 12-13. According to

20   petitioner, this violated *People v. Superior Court (Romero)*, 13 Cal. 4th 497 (1996), which gives

21   state sentencing courts limited discretion to strike prior convictions. The California Court of

22   Appeal denied this claim in a reasoned decision as follows.

23        A. *Legal Background*

24   The three strikes law "'establishes a sentencing requirement to be applied in every
     case where the defendant has at least one qualifying strike unless the sentencing

25   court "conclude[es] that an exception to the scheme should be made because, for
     articulable reasons which can withstand scrutiny for abuse, this defendant should

26   be treated as though he actually fell outside the Three Strikes scheme."'" (*People
     v. Carmony* (2004) 33 Cal. 4th 367, 377.)

27
     A trial court properly exercises its discretion to strike a prior strike only if it finds

28   that "in light of the nature and circumstances of his present felonies and prior

19

1    serious and/or violent felony convictions, and the particulars of his background,
     character, and prospects, the defendant may be deemed outside the [three strikes]
2    scheme's spirit, in whole or in part and hence should be treated as though he had
     not previously been convicted of one or more serious and/or violent felonies."
3    (*People v. Williams* (1998) 17 Cal. 4th 148, 161.)

4    When a trial court declines to strike a prior strike, we review that decision for
     abuse of discretion. (*People v. Carmony, supra,* 33 Cal. 4th at pp. 374-375.) "[A]
5    trial court does not abuse its discretion unless its decision is so irrational or
     arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) Reversal
6    is justified where the court was unaware of its discretion to strike a prior strike, or
     refused to do so at least in part for impermissible reasons. (*Id.* at p. 378.) But
7    where the court, aware of its discretion, "'balanced the relevant facts and reached
     an impartial decision in conformity with the spirit of the law, we shall affirm the . .
8    . ruling, even if we might have ruled differently in the first instance.'" (*Ibid.*)

9    B.  *Procedural Background*

10   Defendant was 23 years old at the time of the crime and 25 at the time of
     sentencing. Defendant's strike was a conviction for first degree residential
11   burglary for taking some video game equipment and personal electronics from a
     residence in 2012 when he was 18 years old.
12
     The trial court recognized that, in deciding whether to strike a strike in the interests
13   of justice, it must consider whether defendant may be deemed outside the spirit of
     the three strikes law, in whole or in part, based on the nature and circumstances of
14   the present felonies and prior serious and/or violent felony convictions, and the
     particulars of his background, character, and prospects. The court then denied
15   defendant's motion. The court recognized that while defendant did not have an
     extensive criminal record, his record did include a juvenile adjudication, two
16   misdemeanor convictions (one of which was for possession of marijuana in
     Arizona the day after the instant offenses), and two felony convictions (including
17   the prior strike, which occurred five years before the instant offenses, and a
     conviction for being a felon in possession of a firearm, which occurred after his
18   burglary conviction and for which he served a term in state prison). The court also
     considered the violent nature of the instant offenses and the fact that defendant fled
19   from officers after committing the burglary leading to his prior strike conviction.
     Additionally, the court observed that defendant's prior strike conviction was not
20   unduly remote in time, nor was there any close factual or legal relationship
     between the prior conviction to indicate a single course of conduct.
21
     The trial court recognized that defendant had a difficult upbringing, has had speech
22   and development issues, was respectful during the entire court process, including
     trial, was youthful, had two young children, and was employed at the time of the
23   crime. However, the court also noted that defendant had documented rule
     violations while in jail awaiting trial for failing to lockdown and for
24   insubordination.
25   The trial court noted that the three strikes law was established as an alternative
     sentencing scheme to punish recidivist felons with prior violent or serious felony
26   convictions, and it reiterated that defendant had been convicted of several criminal
     offenses. The court specifically stated that it considered the nature and seriousness
27   of the instant offenses, defendant's criminal history and his background, and it
     concluded that he was not outside the spirt of the three strikes law.
28

1

2    C.  *Analysis*

3    Defendant offers no basis for us to conclude that the trail court's denial of his
     *Romero* motion was so irrational or arbitrary that no reasonable person could agree
     with it.  As we have explained, the court correctly identified the scope of its
     discretion on the record, considered the nature and seriousness of defendant's
4    crimes and the proximity of defendant's previous crimes to the instant offenses,
     and weighed those factors against defendant's youth, employment status, difficult
5    upbringing, good behavior during trial, and the extent of his criminal record.
     Weighing those factors, the court concluded that defendant was within the spirit of
6    the three strikes law, which was intended in part to punish repeat offenders who
     commit serious or violent crimes.  The court further concluded that defendant's
7    sentence was not unjust.

8    Disagreeing with the trial courts analysis, defendant makes several arguments;
     those arguments simply echo the arguments the trail court considered and rejected
9    in denying the *Romero* motion and ask that we disagree with the trial court's
     conclusions.  Although reasonable minds may disagree over whether the *Romero*
10   motion was meritorious, the trial court's decision was neither irrational nor
     arbitrary and was not an abuse of discretion.[7]

11   ECF No. 13-20 at pp. 17-20.

12       "In conducting habeas review, a federal court is limited to deciding whether a conviction

13   violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 67-68

14   (internal citations omitted).  And, generally, a challenge to a state court's application of state

15   sentencing law – as is the case here – does not give rise to a federal question cognizable on

16   federal habeas review.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  To assert a federal habeas

17   claim based on a state court sentencing error, a habeas petitioner must demonstrate that the

18   sentencing error was "so arbitrary or capricious as to constitute an independent due process or

19   Eighth Amendment violation."  *Richmond v. Lewis*, 506 U.S. 40, 50 (1992).  This petitioner

20   cannot do.

21       This court is required to defer to the state court of appeal's interpretation of state law.  *See*

22   *Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state

23

24   ───────────────────
     [7] [Opinion Footnote 6].  Defendant petitioned for rehearing, claiming in part that we failed to
     recognize his contention that the denial of his *Romero* motion violated his federal right to due
25   process.  We acknowledge and reject that claim for the reasons stated . . . *ante*.  He also claimed
     that we failed to address his argument that denial of his *Romero* motion would make him
26   ineligible for the benefits of youth offender parole statutes and regulations.  We specifically noted
     [] that the trial court considered defendant's youth in denying his *Romero* motion; we recognized
27   that defendant raised several arguments challenging the trial court's ruling but concluded that he
     failed to show an abuse of discretion.  Nothing more was required.  (See *People v. Garcia*, *supra*,
28   97 Cal. App. 4th at p. 853.)  ECF No. 15-1 at pp. 2-3.

law, including one announced on direct appeal of the challenged conviction, binds a federal court

sitting in habeas corpus."). Here, the state court held that there was no abuse of discretion in the

trial court's denial of petitioner's *Romero* motion. The absence of a state law error necessarily

precludes an analysis of whether such error was "arbitrary or capricious." Finally, petitioner may

not attack the denial of his *Romero* motion in a federal habeas petition simply by stating that the

denial violated his federal due process rights. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir.

1996) (a petitioner "may not . . . transform a state-law issue into a federal one merely by asserting

a violation of due process"). This claim must be denied.

### F. Sentencing Claim Regarding Cal. Penal Code § 654

Petitioner's sixth claim alleges that the trial court erred by imposing a concurrent sentence

in violation of Cal. Penal Code § 654. The appellate court rejected this claim in a reasoned

opinion as follows.

A. *Legal Background*

Section 654, subdivision (a) provides in relevant part: "An act or omission that is
punishable in different ways by different provisions of law shall be punished under
the provision that provides for the longest potential term of imprisonment, but in
no case shall the act or omission be punished under more than one provision."

. . .

Whether multiple convictions are based upon a single act is determined by
examining the facts of the case. (*People v. Mesa*, *supra*, 54 Cal. 4th at p. 196.)
We review the trial court's findings "in the light most favorable to the judgment
and presume in favor of the judgment the existence of every fact the trier of fact
could reasonably deduce from the evidence." (*People v. Carpenter* (1997) 15 Cal.
4th 312, 387.)

In *People v. Jones* (2002) 103 Cal. App. 4th 1339, at pages 1147 to 1148 (*Jones*),
the appellate court considered whether the defendant could be sentenced to both
possession of a firearm and the primary offense of shooting at an inhabited
dwelling. The court observed that "[i]t strains reason to assume that [the
defendant] did not have possession for some period of time before firing shots at
the . . . home. Any other interpretation would be patently absurd. [The defendant]
committed two separate acts: arming himself with a firearm, and shooting at an
inhabited dwelling. [The defendant] necessarily had the firearm in his possession
*before* he shot at [the house], when he and his companion came to the house 15
minutes before the shooting, or, at the very least, when they began driving toward
the house the second time. It was therefore a reasonable inference that [the
defendant's] possession of the firearm was antecedent to the primary crime." (*Id.*
at p. 1147.) The court recognized that the defendant "must have had either actual
or constructive possession of the gun while riding in the car, as evidenced by his

22

1    control over and use of the gun during the shooting." (*Ibid.*)

2    The court in *Jones* continued: "The evidence likewise supported an inference that
     [the defendant] harbored separate intents in the two crimes. [The defendant]
3    necessarily intended to possess the firearm when he first obtained it, which, as we
     have discussed, necessarily occurred antecedent to the shooting. That he used the
4    gun to shoot at [the] house required a second intent in addition to his original goal
     of possessing the weapon. [The defendant's] use of the weapon after completion
5    of his first crime of possession of the firearm thus comprised a 'separate and
     distinct transaction undertaken with an additional intent which necessarily is
6    something more than the mere intent to possess the proscribed weapon.'
     [Citation.] That [the defendant] did not possess the weapon for a lengthy period
7    before commission of the primary crime is not determinative." (*Jones, supra*, 103
     Cal. App. 4th at pp. 1147-1148.)

8    B.   *Analysis*

9
     The facts here are indistinguishable from those in *Jones, supra,* 103 Cal. App. 4th
10   at pages 1147 to 1148. Defendant contends that the prosecution presented no
     evidence to show how or when he acquired the gun, or to show that he possessed
11   the gun at some other time before or after the charged shooting. However, finding
     that defendant possessed the gun while driving in the car toward the house where
12   the party was taking place was not "'based on suspicion alone, or on imagination,
     speculation, supposition, surmise, conjecture, or guess work.'"" (*People v. Davis*
13   (2013) 57 Cal. 4th 353, 360.) Rather, the evidence showed defendant left the
     party, drove back and forth past the house, and eventually shot into the crowd.
14   Based on the facts, the court could reasonably infer that defendant possessed the
     gun at some time before forming the separate intent to shoot at the crowd. Indeed,
15   defendant's assertion that he may have fortuitously come into possession of the
     gun – perhaps by finding it in the street or by a passerby handing it to him the
16   instant he shot into the crowd – is entirely fanciful. The trial court did not err
     when it failed to stay sentence on count three.

17
     ECF No. 13-20 at pp. 20-22.

18
         Petitioner's claim of error based upon the alleged misapplication of Cal. Penal Code § 654
19
     does not provide a basis for federal habeas relief.  Although petitioner may contend that his
20
     sentence violates federal due process, his claim is essentially a challenge to the trial court's
21
     application of section 654. *See Langford*, 110 F.3d at 1389 (stating that a petitioner "may not
22
     transform a state-law issue into a federal one merely by asserting a violation of due process.").
23
         As noted *supra* with regard to petitioner's fifth claim, the federal writ is not available for
24
     alleged error in the application of state law, and habeas corpus cannot be utilized in federal court
25
     to try state issues *de novo*. *Estelle*, 502 U.S. at 67-68 (internal citations omitted). And, generally,
26
     a challenge to a state court's application of state sentencing law – as is the case here – does not
27
     give rise to a federal question cognizable on federal habeas review. *See Lewis,* 497 U.S. at 780.
28

1    In addition, the precise claim advanced by petitioner has been found by the Ninth Circuit to be

2    not cognizable in federal habeas proceedings. *Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir.

3    1989) (rejecting as not cognizable in federal habeas proceeding a claim for violation of section

4    654). This claim must be denied.

5                              **G. Fines, Fees, and Assessments**

6                In his seventh claim, petitioner maintains that the imposition by the trial court of various

7    fines, fees, and assessments without a hearing on his ability to pay violates his due process rights

8    and his right to be free from excessive fines under the Fifth, Eighth, and Fourteenth amendments.

9    The appellate court addressed this claim in a reasoned opinion as follows.

10           The trial court imposed various fines and fees at sentencing, including a $1,000
             restitution fine (Pen. Code, § 1202.4, subd. (b)), a $1,000 parole revocation fine,
11           suspended unless parole was revoked (*id.*, § 1465.8, subdivision (a)(1)), and a $30
             court facilities assessment on each count (Gov. Code, § 70373). The court did not
12           impose the main jail booking fee (*id.*, § 29550.2), the jail classification fee (*id.*, §
             29550.2), or the cost of the investigation and presentence report. At the
13           conclusion of the sentencing hearing, defense counsel indicated he would "object
             and submit on the issue of minimum fines and fees," adding that counsel "kn[e]w
14           the Court struck the vast majority of them" and purporting to reference "Duarte."[8]
             (Underline in original.). Defendant did *not* request a hearing on his ability to pay
15           the imposed fines and fees and the court did not rule on the objection or make any
             comment, but merely thanked the parties and concluded the sentencing hearing.
16
             On appeal and relying primarily on *People v. Duenas, supra,* 30 Cal. App. 5th
17           1157, defendant argues the imposition of these fees, fines, and assessments
             without an ability to pay hearing violated his rights to due process and to be free
18           from excessive fines under the Fifth, Eighth, and Fourteenth Amendments to the
             federal Constitution.
19
             We conclude that defendant has forfeited his claims of error by failing to request a
20           hearing before the trial court regarding his ability to pay the challenged fines and
             fees. That a defendant must first object and demonstrate his inability to pay
21           amounts imposed at sentencing is a longstanding and well-recognized rule. (See,
             e.g., *People v. Nelson* (2011) 51 Cal 4th 198, 227 [defendant's claim that court
22           erroneously failed to consider ability to pay a $10,000 restitution fine is forfeited
             by the failure to object]; *People v. Gamache* (2010) 48 Cal. 4th 347, 409
23           [challenge to $10,000 restitution fine forfeited by failure to object to alleged
             inadequate consideration of defendant's ability to pay].) This is true regardless of
24           whether defendant's ability to pay claims are constitutional in nature. (See *People
             v. Trujillo* (2015) 60 Cal. 4th 850, 859 [constitutional exception to forfeiture rule
25           did not apply to claim concerning failure to obtain express waiver of an ability to
             pay hearing]; *In re Sheena K., supra,* 40 Cal. 4th at pp. 880-881 [noting
26           longstanding rule that a constitutional right may be forfeited in criminal
             proceedings by ""failure to make timely assertion of the right before a tribunal

27   _____
     [8] [Opinion footnote 5] We agree with the parties that defendant intended to refer to *People v.
28   Duenas* (2019) 30 Cal. App. 5th 1157.

                                                24

1    having jurisdiction to determine if''''"].)  Thus, defendant had the burden not only
2    to raise the issue of inability to pay a fine, but also to "present evidence of his . . .
      inability to pay the amounts."  (*People v. Castellano* (2019) 33 Cal. App. 5th 485,
3    490; accord, § 1202.4, subd. (d) ["A defendant shall bear the burden of
      demonstrating his or her inability to pay"]; *People v. Santos* (2019) 38 Cal. App.
4    5th 923, 934.)  Thus, although defendant belatedly attempted to refer to *Duenas* at
      the sentencing hearing, he neither claimed he was unable to pay the amount of the
      restitution fine imposed nor requested an ability-to-pay hearing.  Thus, he forfeited
5    his appellate claim that he was entitled to such a hearing.

6    Defendant's claim is also forfeited because the trial court imposed a $1,000
      restitution fine, well above the statutory minimum of $300.  (§ 1202.4, subd.
7    (b)91).)  Defendant had an opportunity to object to the $1,000 restitution fine
      based on an inability to pay because the statute authorizing the fine expressly
8    permitted such a challenge.  (See *id.*, § 1202.4, subds. (b)(1), (c) [defendant's
      inability to pay may be considered in increasing the restitution fine above the $300
9    statutory minimum].)  Defendant's failure to preserve his claim as to the restitution
      fines also forfeited appellate review of assessments imposed under Penal Code
10   sections 1465.8, subdivision(a)(1) and Government Code section 70373.  (See
      *People v. Frandsen* (2019) 33 Cal. App. 5th 1126, 1154 [given the defendant's
11   failure to object to $10,000 restitution fine based on inability to pay, the defendant
      failed to show a basis to vacate substantially smaller assessments]; *People v.
12   Montelongo* (2020) 55 Cal. App. 5th 1016, 1034 [accord].)

13   ECF No. 13-20 at pp. 25-27.

14          The federal writ of habeas corpus is only available to persons "in custody" at the time the

15   petition is filed.  28 U.S.C. §§ 2241(c), 2254(a); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

16   This requirement is jurisdictional.  *Id.*  The Ninth Circuit has specifically held that "an attack on a

17   restitution order is not an attack on the execution of a custodial sentence . . . . [Thus,] § 2254(a)

18   does not confer jurisdiction over a challenge to a restitution order."  *Bailey v. Hill*, 599 F.3d 976,

19   982-83 (9th Cir. 2010) (citing *United States v. Kramer*, 195 F.3d 1129 (9th Cir. 1999)).  *United

20   States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002) (challenged to restitution order not

21   cognizable on habeas review under 28 U.S.C. § 2254 because such order does not affect duration

22   of custody).  Similarly, "the imposition of a fine, by itself, is not sufficient to meet § 2254's

23   jurisdictional requirements."  *Bailey,* 599 F.3d at 979 (citing *Williamson v. Gregoire*, 151 F.3d

24   1180, 1183 (9th Cir. 1998).  This is so even if, as here, the petitioner is actually in custody at the

25   time she or he challenges the fine or restitution order.  *Bailey*, 599 F. 3d at 979-80.

26          Because petitioner's final ground for relief challenges only the fines, fees, and

27   assessments that were ordered as part of his sentence, the "custody" requirement of Section

28   2254(a) is not satisfied and the court does not have jurisdiction to entertain this claim.  In

addition, to the extent petitioner's claim challenging his fines, fees, and assessments alleges violations of state law, petitioner has failed to state a cognizable federal habeas claim. As discussed *supra*, federal habeas relief does not lie for violations of state law. *Estelle*, 502 U.S. at 67; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) (stating that "the issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point"). Accordingly, this claim for relief must be denied.

## IV.   Recommendation

For the reasons stated above, it is hereby RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing § 2255 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: May 29, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE